*506 Opinión disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
Este caso no es justiciable. Hoy, una mayoría de los miembros de este Tribunal sostiene que los demandantes, como contribuyentes y ciudadanos, tienen legitimación activa para impugnar en los tribunales la interpretación que hace la Rama Ejecutiva de una ley de contribuciones de aplicación general y uniforme aprobada por la Asamblea Legislativa, sin que éstos hayan alegado que haya habido violación constitucional de clase alguna. Disiento porque soy del criterio que la conclusión del Tribunal respecto a la legitimación de los demandantes es errónea y no encuentra apoyo en la doctrina sobre el pleito del contribuyente.
Sostengo que ante la naturaleza generalizada de la queja presentada por los demandantes, sumado a la ausencia de un planteamiento de violación de un derecho constitucional por la puesta en vigor de la Ley de Justicia Contributiva de 2006, éstos carecen de legitimación activa como contribuyentes y pensionados, o ciudadanos, para impugnar la interpretación de la ley por parte de la Rama Ejecutiva. Ello a su vez nos lleva a concluir que el curso de acción correcto es la desestimación de la demanda instada.
Los hechos en este caso están sustancialmente resumidos en la opinión del Tribunal, por lo que no entendemos necesario reiterarlos. Pasemos entonces a la discusión propiamente de la controversia que hoy pende ante nosotros.
I
A. El caso ante nosotros plantea un asunto de interpretación estatutaria de la Ley de Justicia Contributiva de 2006, Ley Núm. 117 de 4 de julio de 2006 (Ley de Justicia Contributiva); no se cuestiona, por lo tanto, la constitucio *507 nalidad de la Ley de Justicia Contributiva o la actuación de funcionarios de la Rama Ejecutiva.
Mediante una solicitud de sentencia declaratoria, los demandantes Carlos Romero Barceló, Peter Muller Maldonado y un grupo de ocho ciudadanos pensionados acuden ante nosotros en su capacidad de contribuyentes los primeros, y de contribuyentes y pensionados los segundos. Invocan la jurisdicción de este Tribunal con el propósito de impugnar la interpretación que tanto el Departamento de Hacienda, como el Gobernador del Estado Libre Asociado le han dado a la tasa contributiva sobre ventas y uso aprobada por la Asamblea Legislativa en la Ley de Justicia Contributiva, y que debe comenzar a regir en el país a partir del 15 de noviembre de 2006. Específicamente, los peticionarios arguyen que “ante la ausencia de una redacción expresa en el texto de la [Ley de Justicia Contributiva]” el Gobernador está impedido de “aplicar una tasa contributiva de siete por ciento (7%) de IVU”. (Énfasis en original.) Alegato de los peticionarios, pág. 18.
B. La sentencia declaratoria es un mecanismo procesal de carácter remedial o profiláctico, que le permite a un ciudadano dilucidar ante los tribunales los méritos de cualquier reclamación que entrañe un peligro potencial en su contra. Charana v. Pueblo, 109 D.P.R. 641, 653 (1980). Al solicitar una sentencia declaratoria, el ciudadano puede obtener la protección judicial antes de que el peligro haya madurado hasta convertirse en una grave calamidad y antes que la otra parte inicie un litigio para hacer efectivas sus reclamaciones.
Este mecanismo propicia la seguridad y certidumbre en las relaciones jurídicas, tanto en el ámbito público, como en el privado. Véanse: Sánchez et al. v. Srio. de Justicia et al., 157 D.P.R. 360 (2002); Moscoso v. Rivera, 76 D.P.R. 481, 488 (1954). Éste debe utilizarse cuando permita dar por concluido un estado de incertidumbre o inseguridad en *508 cuanto a derechos reclamados. Suárez v. C.E.E. I, 163 D.P.R. 347 (2004).
Las Reglas de Procedimiento Civil establecen que “[e]l Tribunal de Primera Instancia tendrá autoridad para declarar derechos y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio”. Regla 59.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Quedan así facultados los tribunales para interpretar estatutos que afectan los derechos de un ciudadano y declarar cuáles son los “derechos, estados u otras relaciones jurídicas que de aquéllos [estatutos] se deriv[a]n”. Regla 59.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.(1)
Surge de este marco doctrinal que la sentencia declaratoria es el medio adecuado para ejercer nuestra función como últimos interpretes de las leyes y la Constitución, al declarar el estado de derecho vigente al amparo del palio de nuestros estatutos. Sin embargo, la sentencia declaratoria no le permite a un promovente prescindir de los requisitos de justiciabilidad que nuestro ordenamiento establece para instar un pleito coercitivo plenario. En tal sentido, un demandante tiene que demostrar, entre otras cosas, que tiene legitimación activa para instar el litigio que se encuentre pendiente ante un tribunal. Sánchez et al. v. Srio. de Justicia et al., supra, pág. 384; Moscoso v. Rivera, supra.
Como cuestión de umbral entonces, debemos determinar si en este caso estamos ante una controversia justiciable que amerite nuestra intervención.
C(i). El principio de justiciabilidad es tal vez la limita *509 ción más importante al ejercicio del Poder Judicial. Determina qué asuntos pueden ser atendidos por los tribunales y cuáles deben ser desestimados. En Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 720 (1980), definimos este concepto de la manera siguiente:
Es el término artístico empleado para expresar una doble limitación impuesta sobre los tribunales, a saber: (1) que sólo pueden decidir “cuestiones presentadas en un contexto adversativo y en una forma históricamente visualizada como capaz de ser resueltas a través del proceso judicial” y (2) la restricción que surge del papel asignado a la judicatura en una distribución tripartita de poderes, diseñada para asegurar que no intervendrá en áreas sometidas al criterio de otras ramas del gobierno. Flast v. Cohen, 392 U.S. 83 (1968). La doctrina es autoimpuesta. En virtud de ella los propios tribunales se preguntan y evalúan si es o no apropiado entender en determinado caso tomando en cuenta diversos factores y circunstancias mediante un análisis que les permite ejercer su discreción en cuanto al límite de su poder constitucional.
El concepto de justiciabilidad se concreta en las doctrinas de legitimación activa, academicidad, cuestión política, madurez y en la proscripción a los tribunales de emitir opiniones consultivas. Véanse: Sánchez et al. v. Srio. de Justicia et al., 157 D.P.R. 360 (2002); Noriega v. Hernández Colón, 135 D.P.R. 406, 422 (1994); Hernández Torres v. Hernández Colón, 131 D.P.R. 593, 598-599 (1992); E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958).
Somos, del criterio que la adjudicación en los méritos de los reclamos de los demandantes y peticionarios, como veremos, constituye una clara violación a las normas que he-mos pautado respecto a la legitimación activa, principalmente en lo que se refiere al pleito del contribuyente.
C(ii). La doctrina de legitimación activa busca asegurar que el promovente de una acción posea un interés en el pleito “de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia”. Noriega v. Hernández Colón, supra, pág. *510 427; Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 413 (1982). Para asegurarnos que sea así, hemos exigido que el demandante pueda demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal entre la acción que se ejecuta y el daño alegado, y (4) la causa de acción surge al amparo de la Constitución o de alguna ley. Hernández Torres v. Hernández Colón, supra, pág. 599.(2)
Son varios los valores o principios que subyacen la doctrina de acción legitimada y éstos han matizado nuestras decisiones en el pasado. Destaca entre éstos el reconocimiento de que la exigencia de acción legitimada promueve el respeto institucional a la separación de poderes, atemperando el rol del tribunal en una sociedad democrática. En ese sentido, busca evitar que la Rama Judicial se inmiscuya a destiempo en controversias fundamentalmente políticas cuya solución final le compete a las ramas políticas del Gobierno. Véase Raines v. Byrd, 521 U.S. 811, 819-820 (1997) (“standing inquiry has been especially rigorous [because of separation of powers concerns] when reaching the merits of a dispute would force [it] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional”). Véase, además, A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 (Núm. 4) Suffolk Univ. L. 881 (1983).
Elio no obstante, no hay duda de que habremos de asumir nuestra función constitucional cuando lo exijan las circunstancias, para en efecto preservar ese delicado balance entre las ramas del Gobierno, decretando la ilegalidad o inconstitucionalidad de una actuación legislativa o *511 ejecutiva. En última instancia de lo que se trata es de determinar cuál es el rol apropiado en nuestra sociedad para los tribunales. Con claridad, el profesor Chemerinsky señala: “Separation of powers can be undermined either by overexpansion of the role of the federal courts or by undue restriction. Standing thus focuses attention directly on the question of what is the proper place of the judiciary in the American system of government.” E. Chemerinsky, Constitutional Law: Principles and Policies, 2da ed., Nueva York, Aspen Publishers, 2002, pág. 61.
Si bien hemos expresado que la doctrina sobre capacidad jurídica para entablar demanda contra las agencias y los funcionarios gubernamentales debe ser interpretada amplia y liberalmente —Solis v. Municipio de Caguas, 120 D.P.R. 53, 56 (1987)— ello no implica que hemos abandonado el requisito de que todo litigante tiene que demostrar que ha sufrido un daño concreto y palpable para que los tribunales consideren su reclamo en los méritos.
Precisamente, el requisito de daño claro y palpable responde a la prohibición de que los litigantes presenten quejas generalizadas que se pueden dilucidar de forma más efectiva en las ramas representativas del Gobierno. Véase Warth v. Seldin, 422 U.S. 490, 499 (1975) (“[W]hen the asserted harm is a ‘generalized grievance’ shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction”). Por lo tanto, el mero hecho de que una acción gubernamental lesione o afecte los intereses de los ciudadanos, sin más, no implica que éstos posean legitimación activa para acudir a un tribunal. A modo de ejemplo, el interés abstracto del ciudadano de que el Gobierno actúe conforme a la ley es insuficiente para conferirle jurisdicción a un tribunal de justicia sobre cierta controversia. Véanse: Allen v. Wright, 468 U.S. 737, 754 (1984) (“This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not suffi *512 dent, standing alone, to confer jurisdiction on a federal court”); Valley Forge College v. Americans United, 454 U.S. 464, 483 (1982) (“[Assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. Ill without draining those requirements of meaning”). Véase, además, Lujan v. Defenders of Wildlife, 504 U.S. 555, 575 (1992).
Sobre la prohibición de dilucidar controversias en las que los demandantes sólo presentan una queja generalizada, establecimos en Fund. Arqueológica v. Depto. de la Vivienda, 109 D.P.R. 387, 392 (1980), que “[l]a capacidad para demandar no puede depender de un interés ... que tienen en común todos los que integran el público, por la naturaleza necesariamente abstracta del agravio que todos los ciudadanos comparten”. Véase Schlesinger v. Reservists Committee, 418 U.S. 208, 220-221 (1974) (“Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution”).
En este caso, como vimos, los demandantes invocan la jurisdicción de este Tribunal en calidad de contribuyentes. Veamos entonces esta alegación detenidamente.
II
A. “La doctrina que limita la legitimación activa de los contribuyentes es un ejemplo de la política en contra de que se presenten quejas generalizadas en los tribunales de justicia.” (Traducción nuestra.) L.H. Tribe, American Constitutional Law, 3ra ed., Nueva York, Ed. Foundation Press, 2000, Vol. I, Sec. 3-17, pág. 421.(3) El Tribunal Supremo de *513 Estados Unidos articuló sus objeciones contra pleitos instados por los contribuyentes en el caso seminal Massachusetts v. Mellon, 262 U.S. 447 (1923). En este caso se resolvió que el demandante, quien reclamaba como contribuyente y solicitaba la paralización de unos desembolsos de fondos públicos autorizados mediante legislación federal, no tenía legitimación activa porque su interés en los dineros del tesoro era minúsculo e indeterminado. íd., pág. 487 (“interest in the moneys of the treasury ... is comparatively minute and indeterminable”). El Tribunal dispuso que el demandante tenía que demostrar un daño directo y concreto. íd., pág. 488 (“[plaintiff must allege direct injury] not merely that he suffers in some indefinite way in common with people generally”).
En Flast v. Cohen, 392 U.S. 83 (1968), el Tribunal Supremo se enfrentó nuevamente a un pleito donde se invocaba legitimación activa como contribuyente. Allí resolvió que la determinación de si un contribuyente está legitimado para instar su pleito dependerá de si existe un nexo lógico entre su estatus como contribuyente y la reclamación que se dilucida. El Tribunal diseñó un análisis dual para determinar la existencia de dicho nexo e indicó lo siguiente:
The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, s 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. ... Secondly, the taxpayer must establish a nexus between the status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitu *514 tional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, Sec. 8. Flash v. Cohen, supra, págs. 102-103.
Con posterioridad a Flash v. Cohen, supra, el Tribunal Supremo ha rehusado ampliar lo allí dispuesto. E.g.: Valley Forge College v. Americans United, supra; Schlesinger v. Reservists Committee, supra; United States v. Richardson, 418 U.S. 166 (1974). De ahí que el profesor Chemerinsky, op. cit, pág. 93, resuma la doctrina de pleito del contribuyente de la forma siguiente: “After Richardson, Schlesinger, and Valley Forge the only situation in which taxpayer standing appear permissible is if the plaintiff challenges a government expenditure as violating the establishment clause.”
B. En nuestro ordenamiento, la Ley Núm. 2 de 25 de febrero de 1946 (32 L.P.R.A. sees. 3074-3076) (Ley Núm. 2), prohíbe los pleitos en que los demandantes invocan la jurisdicción del tribunal en su calidad de contribuyentes.
La acción del contribuyente es un tipo de acción que proliferó en Puerto Rico durante la década de 1940, cuando el Gobierno comenzó a implantar un plan abarcador de desarrollo económico y de reformas sociales. Sobre este particular el profesor Serrano Geyls nos indica lo siguiente: “Ciertas personas, entre ellas líderes políticos de la oposición, acudieron a los tribunales en su calidad de contribuyentes, a solicitar órdenes para paralizar varios de los nuevos programas del gobierno [, alegando] la inconstitucionalidad del gasto.” R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 135. E.g. Buscaglia, Tes. v. Corte, 64 D.P.R. 11 (1944) (donde se confirma una decisión del tribunal inferior que le reconoce al demandante acción legitimada como contribuyente y se paralizan los desembolsos de fondos de varios programas sociales). Véase, también, Suárez v. Tugwell, Gobernador, 67 D.P.R. 180 (1947).
*515 A raíz de estos pleitos, la Asamblea Legislativa aprobó la Ley Núm. 2. De la Exposición de Motivos de la Ley Núm. 2 se desprende que su propósito fue evitar litigios en los que se cuestionara “la legalidad o la constitucionalidad de leyes y actuaciones de funcionarios públicos autorizados por ley, por personas que no han sufrido daño real alguno como resultado de las mismas, y que alegan el derecho a demandar meramente por el hecho de ser contribuyentes”. (Énfasis nuestro.) Exposición de Motivos de la Ley Núm. 2 (1946 Leyes de Puerto Rico 7). Resulta meridianamente claro de lo anterior que el legislador, al prohibir la acción de contribuyentes, quiso disuadir la proliferación de pleitos en los que el demandante no sufre un daño real e individualizado. A estos efectos, en Suárez v. Tugwell, Gobernador, supra, pág. 186, determinamos que la Ley Núm. 2 privó a los tribunales de Puerto Rico de jurisdicción para atender casos en los que se alega tener un derecho que pertenece al público y no a ningún individuo en particular.
Por otro lado, en Hernández Torres v. Gobernador, 129 D.P.R. 824 (1992), sostuvimos que un grupo de legisladores, en su calidad de contribuyentes y en representación de todos los contribuyentes de Puerto Rico, carecían de legitimación activa para impugnar la constitucionalidad de la Resolución Conjunta que proveía las asignaciones para los gastos ordinarios del Gobierno del Estado Libre Asociado.(4) En Hernández Torres v. Gobernador, supra, los demandantes habían solicitado un interdicto permanente para impedir el uso de fondos asignados al amparo de la Resolución Conjunta bajo el fundamento de que el presupuesto aprobado era deficitario. En dicha ocasión resolvimos que los legisladores no tenían legitimación activa porque no demostraron que habían sufrido daños personales, *516 claros y palpables, ni que se les había menoscabado sus prerrogativas legislativas. íd., pág. 849. Resolvimos también que no tenían legitimación de acuerdo con lo dispuesto en la Ley Núm. 2.
No es irrazonable concluir que en una situación en que se impugne un gasto autorizado por la Asamblea Legislativa porque se alegue que viola nuestra cláusula de separación de Iglesia y Estado, concluyamos que dicho demandante tiene legitimación activa como contribuyente para instar dicho pleito, independientemente del texto de la Ley Núm. 2. Asoc. Maestros P.R. v. Srio. Educación, 137 D.P.R. 528 (1994).
A la luz de lo anterior, parece evidente que en nuestro ordenamiento, para reclamar válidamente como contribuyente se requiere que el demandante impugne la validez de una ley o actuación gubernamental mediante la cual se desembolsan fondos públicos(5) para un fin específico delineado por el legislador, y que dichos desembolsos violen alguna disposición constitucional. Antes bien, si lo que se reclama es exclusivamente el interés abstracto de que el Gobierno cumpla con la ley, somos del criterio que ese contribuyente no tiene legitimación activa. Ello es así pues este es un interés generalizado que todos los contribuyentes y ciudadanos comparten de idéntica manera por lo que se dificulta, sino imposibilita, su individualización.
De igual forma, una alegación general en el sentido de que la tasa contributiva que habrá de imponer la Rama Ejecutiva afecta el poder adquisitivo del ciudadano y contribuyente, pues limita el dinero que se tiene disponible para utilizar, no confiere legitimación activa. Esta es una *517 alegación igualmente generalizada, compartida por toda la ciudadanía y es también indiferenciada. Véase Opinión mayoritaria, pág. 473 esc. 10. La política pública establecida en la Ley Núm. 2 claramente prohíbe pleitos en los que el contribuyente no logra probar la existencia de un interés concreto e individualizado. Véase Federal Election Comm’n v. Akins, 524 U.S. 11, 35 (1998), opinión disidente del Juez Scalia.
Debemos en este momento referirnos someramente a los fundamentos invocados por la opinión mayoritaria para concluir que los demandantes están legitimados para ins-tar este pleito, los cuales no tan sólo no comparto, sino que estimo errados.
La Mayoría busca apoyo para su tesis en dos citas, una del profesor Serrano Geyls y otra del profesor Tribe. Además, cita en apoyo el caso Bacchus Imports, Ltd. v. Dias, 468 U.S 263 (1984), el cual, nos indica, sostiene que “un contribuyente tienen legitimación activa para impugnar una ley contributiva que determina su propia responsabilidad como contribuyente”. (Enfasis en el original.) Opinión mayoritaria, pág. 472.
Ciertamente, a poco que se revise detenidamente la cita del profesor Serrano Geyls nos parece evidente que allí no se sostiene la proposición expuesta por la Mayoría. Serrano Geyls postula que un contribuyente tiene legitimación activa para “obtener un reembolso” por lo pagado o por lo que se pretende pagar a la luz de una ley que se estima ilegal o inconstitucional. Ese claramente no es el caso de autos. La segunda situación en la cual se alega que procede el pleito del contribuyente es cuando éste “ ‘impugna un acto del gobierno como inconstitucional y alega, como razón para probar su interés de litigante, que él contribuye, mediante el pago de impuestos, al sostenimiento económico del acto alegadamente inconstitucional ”. (Enfasis suplido.) Opinión mayoritaria, pág. 473. Nuevamente, esta no es la situación que tenemos ante nuestra consideración. Me pre *518 gunto, ¿cuál es el acto alegadamente inconstitucional en este pleito?
La referencia a Tribe es igualmente errada. Tribe cita en apoyo a la posición expresada en la cita acogida por la Mayoría, los casos Bacchus Imports, Ltd. v. Dias, supra, y Regan v. Taxation with Representantion of Wash., 461 U.S. 540 (1983). Tribe, op. cit, pág. 421 esc. 33. Ninguno de estos dos casos versa sobre la legitimación activa del contribuyente. El asunto planteado en Bacchus Imports, Ltd. v. Dias, supra, era si el arbitrio que imponía Hawaii sobre las ventas de licor al por mayor y que eximía de dicho pago a licores producidos localmente, violaba la cláusula de comercio por su carácter proteccionista, la cláusula de igual protección de las leyes al discriminar contra productos importados y la cláusula constitucional de importación y exportación. En Regan v. Taxation with Representation of Wash., supra, el Tribunal Supremo sostuvo que una disposición del Código de Rentas Internas federal relacionada con las corporaciones exentas del pago de contribuciones, que condiciona dicho estatus a que éstas no se involucraran en campañas de cabildeo a los congresistas, era constitucionalmente válida, frente una alegación de que violaba la Primera Enmienda.
A base de lo anterior, considero que los fundamentos invocados por la Opinión del Tribunal son desacertados y no sostienen la posición adoptada por la Mayoría del Tribunal.
III
Los demandantes Carlos Romero Barceló, Peter Muller Maldonado y un grupo de ocho ciudadanos pensionados alegan tener legitimación activa en el presente caso como contribuyentes los primeros, y como contribuyentes y pensionados los segundos. En síntesis, acuden ante nosotros *519 para hacer valer el interés generalizado que tiene todo ciudadano en que el Poder Ejecutivo cumpla con la ley según la interpretan, así como también por estimar que la interpretación de la Rama Ejecutiva de la Ley de Justicia Contributiva limita su poder adquisitivo.
Según los demandantes, lo que les causa daño es la interpretación que hace el Gobernador de la tasa de interés sobre el consumo y el uso dispuesto en la Ley de Justicia Contributiva, pues eventualmente pagarán más y verán sus finanzas afectadas al “disminuirse” su poder adquisitivo. Su interés es entonces que la ley se interprete conforme ellos entienden que fue aprobada. Es decir, que el Gobierno aplique la ley correctamente. A todas luces, esto es un reclamo y daño generalizado que comparte toda la ciudadanía. Como hemos dicho, en ausencia de una alegación válida de violación a un derecho constitucional, el reclamo general de que la ley es interpretada equivocadamente es insuficiente para reconocerle a un contribuyente o ciudadano legitimación activa para incoar un pleito como el de autos. Por otro lado, huelga señalar lo obvio: los demandantes no han impugnado desembolso de gasto alguno de parte de la Rama Ejecutiva.
Reconocer que los demandantes poseen legitimación activa para cuestionar la actuación de la Rama Ejecutiva de interpretar el texto de una ley y ponerla en vigor, sin alegación alguna de que ha habido una violación constitucional, abriría las puertas del tribunal de “par en par para la consideración de cualquier caso que desee incoar cualquier ciudadano en alegada protección de una política pública”. Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716, 723-734 (1974). Tal vez más grave aún, una propuesta de esta naturaleza parecería apuntar a un sistema de gobierno en el que los tribunales cargan con la obligación de “cumplir y hacer cumplir las leyes”, facultad ínsita al Poder Ejecutivo. Art. IV, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1. Véase Federal Election Comm’n v. Akins, supra, pág. 36.
*520 Finalmente, tanto los demandantes como la Opinión del Tribunal expresan una preocupación por que de no reconocerles legitimación activa en este caso nadie la tendría. No compartimos dicho parecer. Lo cierto es que hay unos asuntos cuya solución no compete a la Rama Judicial y sí al proceso político. A quienes no les satisfaga la interpretación del Gobernador respecto la Ley de Justicia Contributiva tienen a su haber el poder más poderoso en una democracia para dejarse escuchar: el voto. Ante un planteamiento idéntico al que ahora preocupa a la Mayoría, hago mías las expresiones del Juez Presidente Burger en United Status v. Richardson, supra, pág. 179, de la cual citamos extensamente:
It can be argued that, if respondent is not permitted to litigate this issue, no one can do so. In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process. Any other conclusion would mean that the Founding Fathers intended to set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the National Government by means of lawsuits in federal courts. The Constitution created a representative Government, with the representatives directly responsible to their constituents ... that the Constitution does not afford a judicial remedy does not, of course, completely disable the citizen who is not satisfied with the “ground rules” established .... Lack of standing within the narrow confines of Art. Ill jurisdiction does not impair the right to assert his views in the political forum or at the polls. Slow, cumbersome, and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them. (Enfasis nuestro.)
Al respecto, véase también Schlesinger v. Reservists Committee, supra, pág. 227 (“Our system of government leaves many crucial decisions to the political process. The assumption that if respondents have no standing to sue, no *521 one would have standing, is not a reason to find standing”). (Énfasis nuestro.)
Ante la ausencia de una controversia justiciable, soy del criterio que el pleito de epígrafe debió ser desestimado. Por los fundamentos expresados, disiento de la opinión dictada hoy.

 Dicha regla establece:
“Toda persona interesada en una escritura, testamento, contrato escrito, u otros documentos constitutivos de contrato, o cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, ordenanza municipal, contrato o franquicia, podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos estatutos, ordenanzas, contrato o franquicia, y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven. Un contrato podrá ser interpretado antes o después de haber sido infringido.” 32 L.P.R.A. Ap. Ill, R. 59.2.

 La Asamblea Legislativa, sin embargo, puede conferir a determinadas personas legitimación activa para presentar un recurso judicial determinado al amparo de un estatuto. Este no es el caso ante nuestra consideración. En ausencia de un estatuto que le conceda legitimación activa, el demandante tiene que cumplir con los requisitos que hemos enumerado.

 Sobre este tema confróntese, entre otros: N.C. Staudt, Taxpayers in Court: A Systematic Study of a (Misunderstood) Standing Doctrine, 52 (Núm. 2) Emory L.J. 771 (2003); S.L. Parsons, Comments: Taxpayer’s Suits: Standing Barriers and Pecuniary Restraints, 59 (Núm. 3) Temple L.Q. 951 (1986); E.B. Schnurer, “More than an *513 Intuition, Less than a Theory”: Toward a Coherent Doctrine of Standing, 86 (Núm. 3) Colum. L. Rev. 564 (1986); D.S. Boagen, Standing up for Flast: Taxpayer and Citizen Standing to Raise Constitutional Issues, 67 Ky. L.J. 147 (1978-1979).

 Los allí demandantes también reclamaron legitimación a nombre del interés público y como representantes de su electorado.

 A modo de ejemplo, en Suárez v. Tugwell, Gobernador, 67 D.P.R. 180 (1947), determinamos que la Ley Núm. 2 de 25 de febrero de 1946 (32 L.P.R.A. sees. 3074r-3076) impedía la presentación de una acción de contribuyente en la que el demandante impugnó la asignación de fondos públicos a la Compañía Agrícola de Puerto Rico. El demandante alegó que la asignación ilegal de fondos a dicha compañía le ocasionaría graves e irreparables daños a él como contribuyente y a todos los contribuyentes de Puerto Rico.